Constance C. WOOD, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, a corporation,
Defendant.

No. 38685.

United States District Court
N. D. California, S. D.

April 27, 1961.

Moerdyke, Anderson, Evans & Rhodes, Palo Alto, Cal., for plaintiff.

Knight, Boland & Riordan, Burton L. Walsh, San Francisco, Cal., Adams, Duque & Hazeltine, Los Angeles, Cal., for defendant.

HARRIS, District Judge.

Plaintiff, widow of Jean L. Wood, seeks to recover as the beneficiary under an insurance policy issued to decedent in the amount of $15,000. Defendant company denies liability on the ground that decedent was not insured at the time of his death. The issue, as framed by the pleadings and the evidence at the trial: Was Jean L. Wood covered by defendant's insurance policy on January 17, 1959, when he died of a heart attack? The essential facts are not in dispute:

The chronology of events giving rise to the present dispute begins on January 12, 1959. On that date, an agent of defendant company visited decedent at his Palo Alto home and presented him with a mortgage insurance policy application. After extensive discussion among decedent, his wife and the agent, the Woods concluded that the policy was desirable and Mr. Wood gave a check to agent John R. Young for $12.45 which covered the first monthly premium. Mr. Young made out a receipt for the check.

In connection with his interview, decedent was completely candid as to his background and his health. On Part A of the application which he completed, he disclosed that the Occidental Life Insurance Company had declined to accept him as a risk in 1958. Nonetheless, agent Young accepted the first premium

payment and informed decedent and his wife that insurance was effective at once, pursuant to the provision contained in the application, which reads in part as follows:

"* * * If any amount equal to the full first premium on the policy applied for is paid to and accepted by the Company at the time Part A of this application is signed and if this application is approved at the Company's Home Office for the class, plan and amount of insurance herein applied for, then the insurance in accordance with the terms of the policy applied for shall be in force from the date hereof."

This language was brought to decedent's attention, as well as the following sentence which appears on the receipt made out when decedent paid the first month's premium:

"If the sum collected at the time Part A of this application is signed is at least equal to the full first premium on the policy applied for and if such application is approved at the Company's Home Office for the class, plan, and amount of insurance therein applied for, then the insurance in accordance with the terms of the policy applied for shall be in force from this date * * *"

Five days after decedent paid the premium, he went to the office of Dr. Henry De Feo in order to undergo a medical examination for completion of the remaining parts of the insurance application. Mr. Wood's candor in answering questions under Part B impressed Dr. De Feo, who noted that the applicant had received a medical discharge as a Lieutenant Colonel in the Army following his recovery from a 1954 coronary heart attack. The Doctor further noted, in his own examination, that the heart beat, while a normal 76, was irregular, both as to rate and rhythm. He described decedent's appearance as that of a person with "marked pallor, forehead perspires." He commented that "applicant appears to have precardial pain but denies this." On the stand, Dr. De Feo testified that the pallor and perspiration might have been caused by nervousness, which is not uncommon when individuals appear for an insurance examination.

On the same day that decedent completed his medical examination, he died in his home of a heart attack. This was on Saturday, January 17, 1959. The following week, on January 21, 1959, defendant company (with knowledge of the intervening death), declined to accept the application for insurance. Its doctor testified that he concluded, without knowledge of what had occurred in the interim, that decedent was not an insurable risk, as disclosed by his answers on the application and the findings of Dr. De Feo who conducted the examination.

Defendant company, through its agent, sought to return the premium collected from decedent. Plaintiff refused to accept it and initiated the instant action to recover on the policy.

Thus the Court is confronted with the problem of determining whether decedent, a forty-one year old retired Lieutenant Colonel, studying for his Ph.D. at Stanford University where he had been on the speech faculty during the preceding year, was covered by defendant at the time of his sudden death some five years after a first attack suffered while in the army.

At the outset, defendant relies upon California Insurance Code § 10115 which was enacted in 1949 to cover the effect of a binder when the applicant dies on or after the date of application or on or after the date of medical examination but before the policy is issued and delivered. Defendant contends that under the language of this section, the company is bound only if "pursuant to its regular underwriting practices and standards, (it) approves the application for the issuance by it of a policy of life insurance." However, defendant concedes that it may waive such require-

ment by using more liberal language in its application and receipt.[1]

■■ In neither the Grant nor the Ransom case did the Court itself discuss or otherwise dignify the effect of Section 10115 despite the arguments advanced by the insurance company in each case.[2] The decisions, however, constitute holdings to the effect that an insurance company may bind itself when it receives payment of a premium, subject to a condition subsequent whereby the company may disapprove the application. Thus the Insurance Code provision merely states a special case which gives rise to liability. It does not preclude a company from binding itself even though an applicant fails to meet all the conditions set forth in Section 10115.

Metropolitan Life Ins. Co. v. Grant, supra, holds that an applicant, killed before medical examination or company approval (or killed after medical examination, but before approval) is covered under the language contained in the application and receipt.[3] Such language also fits an applicant who dies before or after examination and before company approval.

For construction of the particular clauses and phrases which defendant has selected in the principal case, the Court must resort to the controlling decisions of the Supreme Court of the State of California and the Ninth Circuit, which has followed the State Supreme Court. The Insurance Code provisions do not aid in translating language used by defendant in his application form and its receipt which it issued to applicant upon his payment of the premium.

Defendant has conceded, in its discussion of Ransom v. Penn Mutual Life Insurance Co., supra, and Metropolitan Life Insurance Co. v. Grant, supra, that "These cases (hold) that where an applicant for insurance pays the full first premium called for under the policy applied for at the time of application and is given a receipt for such payment, the

1. Cf. Metropolitan Life Insurance Co. v. Grant, 9 Cir., 268 F.2d 307. See also commentary on "Binding Receipts" in 7 Stanford Law Review 292, analyzing the law of California as construed by the California State Supreme Court in Ransom v. Penn Mutual Life Insurance Co., 1954, 43 Cal.2d 420, 274 P.2d 633.

2. The Metropolitan Life Insurance Company in the Grant case contended that the Insurance Code section established the fact that the policy would not become effective until compliance with certain conditions precedent. Among them "approval" by the company, including passage of a medical examination, was deemed necessary before the policy could become binding. (See Appellant's brief in the Grant case at p. 43 et seq.)

The Penn State Mutual in the Ransom case had urged the applicability and the controlling effect of Section 10115 to the facts before the court. In both the petition for hearing and on the motion for rehearing following the court's decision, counsel argued that the Insurance Code provision was vital to a correct disposition of the case. (Appellant's brief, filed June 1, 1953, pp. 5 and 13; appellant's petition for rehearing, filed October 22, 1954, pp. 4, 13 and 26.)

Counsel argued that

"The Code section provides that the company is bound upon receipt of the application and the first premium if the company 'approves the application by the issuance by it of a policy of life insurance on the plan and for the class of risk and amount of insurance applied for' * * * The Code section thus makes it clear that the Legislature intended that the company should be bound only if the applicant was in fact insurable. This court should not, as it apparently has done, take a position inconsistent with the Code section and contrary to the policy which it expresses."

Appellant contended that Ransom was not in fact insurable because of his high blood pressure which would have led to his ultimate rejection by the company if it had had an opportunity of passing upon the application prior to the death of the insured. In this respect, the case is similar to the one now before the court. It is to be noted that the Supreme Court of California rejected this argument and held that despite the provisions in the Insurance Code and the receipt made out at the time decedent applied for his policy that Ransom was covered at the time of his death.

3. Cf. Tr. p. 128.

applicant is covered by insurance unless and until his application is rejected by the company regardless of whether or not he is an insurable risk."[4] Thus, as a matter of law, plaintiff's husband was insured at the time of his sudden death shortly after he completed his physical examination—and before defendant company attempted to reject the application.

Defendant, however, challenges the correctness of these two decisions which are controlling. It analyzes the cited authorities and attempts to distinguish them. Then it requests this Court to depart from the law enunciated by the Court of Appeals for the Ninth Circuit and the Supreme Court of California, contending that it could not have been the intent of these tribunals to afford protection to an uninsurable risk, such as decedent.

In both cases, the Court was aware of the scope of its decision, and considered insurability irrelevant. As stated in the Grant case, "The coming into effect of the insurance here was conditioned only upon the signing of Part A and the payment of the first full premium." 268 F.2d 307, 311, footnote 1. In Ransom, despite applicant's high blood pressure (which admittedly did not contribute to his death), the Court held the company liable. Speaking through Chief Justice Gibson, the Court stated:

" * * * that if the company did not intend that the insurance should be effective from the date of the application it would be obtaining a premium for a period during which there was no insurance, and this would not be dealing honestly with the insured." 43 Cal.2d 420, 424, 274 P.2d 633, 635.

"There is an obvious advantage to the company in obtaining payment of the premium when the application is made, and it would be unconscionable to permit the company, after using language to induce payment of the premium at that time, to escape the obligation which an ordinary applicant would reasonably believe had been undertaken by the insurer. Moreover, defendant drafted the clause, and had it wished to make clear that its satisfaction was a condition precedent to a contract, it could easily have done so by using unequivocal terms." 43 Cal.2d 420, 425, 274 P.2d 633, 636.

Despite such admonition by the Supreme Court in 1954, adhered to and reaffirmed by the Ninth Circuit in 1959, defendant has not chosen to draft provisions which clearly, or at all, set forth a condition precedent to an effective policy. The language used in the principal case, like that considered in Ransom and Grant, gives rise to immediate liability. When plaintiff's husband paid the premium and obtained the receipt from defendant's agent, coverage was complete, subject only to a condition subsequent. Death intervened before defendant could act upon the condition by rejecting the application.

It may be inferred from defendant's failure to remedy the situation by appropriate language that the companies would rather assume a calculated risk in an isolated case such as this, than lose the benefits flowing from the general acceptance of premiums in advance, thus binding and committing the insured immediately to the contract as written.

Judgment may be entered for plaintiff on preparation of findings of fact and conclusions of law in accordance with the foregoing.

4. Defendant's memorandum, p. 4, 1, 23 et seq.