[No. F014155. Fifth Dist. Oct. 30, 1991.]

DORIS J. WILSON, Plaintiff and Appellant, v.
WESTERN NATIONAL LIFE INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

John S. Dulcich for Plaintiff and Appellant.

Borton, Petrini & Conron and Michael D. Ott for Defendant and Respondent.

**OPINION**

**STONE (W. A.), Acting P. J.—**

THE CASE

This case deals with a common turn of events leading to life insurance litigation: A purchaser of life insurance died after he applied for a policy and paid the first month's premium, but before the insurance company had an opportunity to accept the application and issue a policy. The company later refused to pay the proceeds because of an alleged material misrepresentation in the application.

Plaintiff, Doris J. Wilson, stated several causes of action against defendant, Western National Life Insurance Company (Western) following Western's refusal to pay the proceeds of a policy insuring the life of her husband, Daniel. Western answered the complaint and set forth certain affirmative defenses, including rescission of the insurance contract. The court thereafter granted Western's motion and entered summary judgment, from which plaintiff appeals.

In granting summary judgment, the trial court reasoned:

"There is no triable issue of material fact with respect to defense that the policy is unenforceable by reason of decendent's [*sic*] misrepresentation of the material fact that he fainted on August 10, 1985 as a result of a heroin overdose and was treated on that date for such a condition. Insurance Code Sections 331 and 334. The misrepresentation consisted of the false details to Question 14(a) of the application reporting that the only incident of fainting within the past five years resulted from a motorcycle accident during May, 1985. Although plaintiff disputes whether question 14(a) was asked and whether decedent's response was as reported, plaintiff's citations to the record do not support the plaintiff's contention that either Wilson or Cantrell testified either that the question wasn't asked or the application did not accurately report decedent's answer.

"There was also a false response in the application to question No. 17 (whether decendent [*sic*] was treated by physician in the past five years for a cause other than previously described). Plaintiff in her deposition August 5, 1987 (page 29, lines 12 through 25) testified that the agent in reading this question had referred [*sic*] decedent's last treatment, rather than all treatments within the preceding five years not previously disclosed on the application; nevertheless, the 'no' answer on the application was false as the decendent [*sic*] was treated for a heroin overdose after the motorcycle accident referred to in response to question 14(a).

"Both of the foregoing misrepresentations were material. Affidavit of Barry Bourland.

"Neither Insurance Code Section 10115 of [*sic*] Section 10382 validate a policy unenforceable by reason of a material misrepresentation of the insured. Section 10115 specifically provides that a life policy is effective upon submission of application and payment of premium subject to defenses as if such policy had been issued. Section 10381.5 does not require that the insured be provided with a copy of the application prior to the issurance [*sic*] of the policy."

THE FACTS

On October 8, 1985, Gil Cantrell, an agent for Western, met with Doris and Daniel Wilson for the purpose of taking their application for life insurance. The meeting took place in the Wilson home. Cantrell asked questions of the Wilsons and recorded their responses on a written application form. Both of the Wilsons signed the application. For our purposes, the important portions are questions 13, 14(a), 16(a) and (b) and 17 and their answers, which read:

"13. In the past 10 years, have you been treated or joined an organization for alcoholism or drug addiction? If 'Yes', explain under 'Details' on reverse side.

<u>Yes</u> <u>No</u>

— <u>X</u>

"To the best of your knowledge and belief:

| | Yes | No | Details |
|---|---|---|---|
| "14. in the past 10 years, have you had or been told that you had: a. dizziness, fainting spells, epilepsy, nervous breakdown, severe headaches, or any disease or disorder of the brain or nervous system? | x | — | #14A. Daniel:[1] Motorcycle accident 5-85 Removed blood clot from top of head. In hospital approx. 16 days. Surgery successful. Has been released from disability to continue work. Normal recovery, no complications |

" . . . . . . . . . . . . . . . . . . . . . . . . .

"16. a. When did physician or practitioner last examine, advise or treat you?
[*Response: Name and address of a doctor*]
 b. Give reason for and results of consultation.
*Chaeuffers [sic] Physical (Doris)*

"17. In the past 5 years, have you consulted or been treated or examined by any physician or practitioner
(a) not named above? — x
(b) for any cause not recorded above? — x"

Cantrell kept the application and gave the Wilsons a conditional receipt showing payment of the first month's premium. According to Doris Wilson, Cantrell told them they were insured as of the day he took the application.

That part of the receipt important for our discussion reads:

---

[1]Handwritten responses are *italicized.*

"FIRST. Conditions Under Which Insurance May Become Effective Prior to Policy Delivery.

"If each and every one of the following conditions shall have been fulfilled exactly—

". . . . . . . . . . . . . . . . . . . . . . . .

"(d) on the Effective Date the state of health and all factors affecting the insurability of the Proposed Insured must be as stated in application Part One and in any application Part Two required by the Company—"

Daniel Wilson died from a drug overdose on October 10, two days after he and his wife signed the application.

In mid-December 1985, Doris Wilson received in the mail the life insurance policy and a copy of the signed application. She then spoke with Cantrell and advised him of her husband's death. She asked Cantrell how she could make a claim for recovery of the policy's $50,000 death benefit. Thereafter, she made a demand for payment. Western refused to pay, alleging, among other things, a failure to disclose an incident on August 13, 1985, when Daniel fainted from a narcotic overdose and received hospital treatment.

## DISCUSSION

### I. Some Miscellaneous Matters

Before coming to grips with the pivotal issue in the case—the effect of the failure of either plaintiff or decedent to disclose decedent's fainting spell and hospitalization from a narcotic overdose—we note some general rules pertaining to review on summary judgment and to life insurance contracts, as well as some facts and law pertinent to this particular case.

### A. Summary Judgment Review.

The role of the trial court in ruling upon a motion for summary judgment is well settled:

"Summary judgment is granted when all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c.) It is a drastic remedy eliminating trial and therefore the moving party's declarations must be strictly construed and the opposing party's declaration liberally

construed. (*Brandlin* v. *Belcher*, 67 Cal.App.3d 997, 999 [134 Cal.Rptr. 1].) If there is any issue of material fact to be tried, summary judgment must be denied. (*D. E. Sanford Co.* v. *Cory Glass etc. Co.*, 85 Cal.App.2d 724, 726 [194 P.2d 127].) Summary judgment may not be granted by the court based on inferences reasonably deducible from the papers submitted, if such inferences are contradicted by other inferences which raise a triable issue of fact. (Code Civ. Proc., § 437c; 4 Witkin, Cal. Procedure (2d ed. 1971, 1977 pocket supp.) Proceedings Without Trial, § 196A, p. 35.)" (*Hepp* v. *Lockheed California Co.* (1978) 86 Cal.App.3d 714, 717-718 [150 Cal.Rptr. 408]; see also 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, §§ 285, 296, 302, pp. 585-586, 593-594, 597-598.)

B. *Effective Date of Interim Coverage.*

As a general rule, interim life insurance arises at the time a purchaser pays the initial premium and coverage exists if the insured dies before the company issues a policy.

In *Ransom* v. *Penn Mutual Life Ins. Co.* (1954) 43 Cal.2d 420 [274 P.2d 633], the court interpreted a similar clause in order to determine whether a life insurance agreement was in effect when Ransom met his untimely death:

" 'If the first premium is paid in full in exchange for the attached receipt signed by the Company's agent when this application is signed the insurance shall be in force, subject to the terms and conditions of the policy applied for, from the date of Part I or Part II of this application, whichever is the later, provided the Company shall be satisfied that the Proposed Insured was at that date acceptable under the Company's rules for insurance upon the plan at the rate of premium and for the amount applied for, but that if such first premium is not so paid or if the Company is not satisfied as to such acceptability, no insurance shall be in force until both the first premium is paid in full and the policy is delivered while the health, habits, occupation and other facts relating to the Proposed Insured are the same as described in Part I and Part II of this application and in any amendments thereto.' " (43 Cal.2d at p. 423.)

The court then framed its choice of interpretations of the clause:

"We must determine whether a contract of insurance arose immediately upon receipt by defendant of the completed application with the premium payment, subject to the right of defendant to terminate the agreement if it subsequently concluded that Ransom was not acceptable, or whether, as defendant contends, its satisfaction as to Ransom's acceptability for insur-

ance was a condition precedent to the existence of any contract." (43 Cal.2d at p. 423.)

The court concluded a contract of insurance existed:

"We are of the view that a contract of insurance arose upon defendant's receipt of the completed application and the first premium payment. The clause quoted above is subject to the interpretation that the applicant is offered a choice of either paying his first premium when he signs the application, in which event 'the insurance shall be in force . . . from the date . . . of the application,' or of paying upon receipt of the policy, in which event 'no insurance shall be in force until . . . the policy is delivered.' The understanding of an ordinary person is the standard which must be used in construing the contract, and such a person upon reading the application would believe that he would secure the benefit of immediate coverage by paying the premium in advance of delivery of the policy." (43 Cal.2d at p. 425.)

■ The holding of *Ransom* was succinctly summarized in *Wernecke* v. *Pacific Fidelity Life Ins. Co.* (1965) 238 Cal.App.2d 884 [48 Cal.Rptr. 251]: "[B]y the decision in [*Ransom*] California has aligned itself with those jurisdictions holding, in effect, that where an applicant for life insurance pays a prescribed premium, and the writings evidencing the transaction state that the insurance applied for is effective from date of application upon payment of the premium and company satisfaction of insurability, it will be deemed the parties intended the insurance to be effective forthwith, subject to termination upon notice from the company that the applicant is not insurable." (*Id.* at pp. 886-887.)

Without considering the effect of any misrepresentation, under *Ransom* a contract of insurance arose at the time the Wilsons completed the application and made the first premium payment.

C. *Western's Failure to Attach Copies of Application or Company Rules to Receipt.*

■ Plaintiff argues Insurance Code[2] section 10381.5 requires the application to be attached to the policy in order for any provisions in the application to be effective. Section 10381.5 is part of chapter 4 of part 2, division 2 of the Insurance Code, and section 10270, subdivision (b), in defining the applicability of chapter 4, provides its terms apply to certain

---

[2]All statutory references are to the Insurance Code unless otherwise indicated.

types of insurance, but not life insurance. Therefore, section 10381.5 is not pertinent to this case. (For a similar interpretation of section 10381.5, see *Ashley* v. *American Mutual Liability Insurance Co.* (N.D.Cal. 1958) 167 F.Supp. 125, 130.)

Likewise, section 10113 does not help plaintiff. It provides:

"Every policy of life, disability, or life and disability insurance issued or delivered within this State on or after the first day of January, 1936, by any insurer doing such business within this State shall contain and be deemed to constitute the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings, of either of the parties thereto or of any other person, unless the same are indorsed upon or attached to the policy; and all statements purporting to be made by the insured shall, in the absence of fraud, be representations and not warranties. Any waiver of the provisions of this section shall be void."

Plaintiff cites *Telford* v. *New York Life Ins. Co.* (1937) 9 Cal.2d 103 [69 P.2d 835] and *Rutherford* v. *Prudential Ins. Co.* (1965) 234 Cal.App.2d 719 [44 Cal.Rptr. 697] in support of her argument the application must be attached to the policy in order for a company to rely on any provision in the application. While that proposition is not only true, but codified in section 10113, in this case plaintiff received the application as part of the policy in December. There is nothing in this section requiring that the policy with attached application arrive before the insured dies. Western complied with section 10113.

While the conditional receipt may govern the date coverage commences, it is not a policy. Plaintiff has cited no authority, and we know of none, that considers a conditional receipt to be a policy of life insurance. While the receipt may trigger the commencement of coverage, it is not the policy.

D. *Waiver of Information About Drug Addiction.*

Plaintiff asserts Western waived its right to receive information about Daniel's drug addiction because the wording of question 13 of the application, regarding treatment for addiction, did not require an affirmative answer by Daniel.

However, what plaintiff's argument overlooks is that Daniel failed to respond accurately to questions 14(a) and 17. These two responses were the ones upon which the trial court relied in making its finding of misrepresentation. Plaintiff cites no authority for the proposition that an insurance

company relinquishes its right to accurate answers to some questions simply because another particular question on the same subject does not require an affirmative answer by the applicant.

### E. *Irrevocable Coverage Until Rejection by the Company.*

Plaintiff next argues if interim coverage arose at the time of the first premium payment, then Daniel remained insured until Western rejected coverage. In other words, Western's rejection had to be based on a condition subsequent, and until that condition arose, coverage continued.

While all law students must grapple with the concepts of conditions precedent and conditions subsequent in first year contracts, few really understand them and most learn only enough to pass the necessary examinations. ■ Fortunately, we are spared such a painful analysis, because *Logan* v. *John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988 [116 Cal.Rptr. 528] has determined all conditions are conditions precedent in the construction of life insurance contracts. (*Id.* at pp. 993-994.) Thus, satisfaction of enforceable conditions goes to the essence of the contract. Characterizing a condition as precedent or subsequent will not resolve the issue before us.

## II. *The Misrepresentation*

### A. *Proof of a Misrepresentation.*

■ Plaintiff asserts the court erroneously granted summary judgment because Western failed to prove she or decedent made a misrepresentation in the application. We disagree.

In her deposition, plaintiff testified neither she nor decedent told Cantrell about decedent's fainting spell or his hospital treatment two months earlier. Thus, there is no question but that they omitted medical information. Likewise, it is not reasonable to infer that Cantrell's conduct caused the omission of the pertinent information.

Knowledge of the true facts by plaintiff and decedent is beyond dispute. While plaintiff argues a trier of fact could perhaps find they forgot about or did not understand the significance of such information, plaintiff has come forward with no evidence upon which such a finding could be made. (*Kallen* v. *Delug* (1984) 157 Cal.App.3d 940, 948 [203 Cal.Rptr. 879].)

### B. *Materiality of the Misrepresentation.*

Plaintiff further argues the misrepresentation, if one occurred, was not material.

Regarding the materiality of a statement made on an insurance application, *Imperial Casualty & Indemnity Co.* v. *Sogomonian* (1988) 198 Cal.App.3d 169 [243 Cal.Rptr. 639] is not only instructive, but on point:

"Defendants . . . argue that the issue of materiality should not be resolved summarily but rather the trier of fact should determine if the omissions and false representations were material. However, that materiality, as Insurance Code section 334 tells us, must be determined 'solely by the probable and reasonable influence' which the admittedly undisclosed information would have had upon Imperial's decision to issue the policy. This is a *subjective* test; the critical question is the effect truthful answers would have had on Imperial, not on some 'average reasonable' insurer. . . . Defendants offer us no evidentiary assistance on this point, but content themselves with the naked argument that since a jury might 'disbelieve' all of the uncontradicted evidence presented by Imperial, they are entitled to a trial on the question of materiality. We disagree." (*Id.* at p. 181, fn. omitted.)

Likewise, plaintiff's only argument is that perhaps a trier of fact might disbelieve Western's evidence that it would not have issued the policy had it known about decedent's fainting spell and hospital treatment in August. Plaintiff's argument must fail. The trial court properly found the omission to be material and the evidence supporting its materiality uncontradicted. "Summary judgment is proper if the evidence in support of the moving party would be sufficient to sustain a judgment in his favor and the opposing party has not presented any facts which give rise to a triable issue of material fact. (Code Civ. Proc., § 437c; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)" (*Kallen* v. *Delug, supra,* 157 Cal.App.3d at p. 948.)

## C. *Effect of the Material Misrepresentation on Interim Coverage.*

Plaintiff asserts, based upon *Wood* v. *Metropolitan Life Insurance Company* (N.D.Cal. 1961) 193 F.Supp. 371, 373-374, that insurability and misrepresentation are irrelevant when considering coverage during the period between payment of the first premium and issuance of the policy. In *Wood,* the applicant died after submitting an application, paying the first month's premium, and being told he was insured as of that time. He died after an examination by an insurance company physician, but before the results of the medical examination were made available to the company. (*Id.* at pp. 371-372.)

The *Wood* court quoted the concession of the defendant insurance company in its discussion of *Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43

Cal.2d 420, and *Metropolitan Life Insurance Co.* v. *Grant* (9th Cir. 1959) 268 F.2d 307, 308-310, " '. . . that where an applicant for insurance pays the full first premium called for under the policy applied for at the time of application and is given a receipt for such payment, the applicant is covered by insurance unless and until his application is rejected by the company regardless of whether or not he is an insurable risk.' " (*Wood* v. *Metropolitan Life Insurance Company, supra,* 193 F.Supp. at pp. 373-374, fn. omitted.) The *Wood* court concluded, as a matter of law, the decedent was insured at the time of death. (*Id.* at p. 374.) The language of the policy itself gave rise to immediate liability. (*Ibid.*)

However, plaintiff's case differs from *Wood, Ransom,* and *Grant* in one important respect: The basis for Western's denial of coverage was the misrepresentations made by plaintiff and decedent in their application, not what a later medical examination uncovered after submission of the application.

*Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904 [109 Cal.Rptr. 473, 513 P.2d 353] dispels any notion that a material representation on a life insurance application can never create a right to rescind coverage. ■ Although the court ultimately determined no material misrepresentation had been made by the applicant, it discussed the issue thoroughly since had it determined misrepresentation occurred as a matter of law, Occidental would have had the right to rescind its entire obligation:

"It is generally held that an insurer has a right to know all that the applicant for insurance knows regarding the state of his health and medical history. [Citations.] Material misrepresentation or concealment of such facts are grounds for rescission of the policy, and an actual intent to deceive need not be shown. [Citations.] Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. (Ins. Code, § 334; *Burns* v. *Prudential Ins. Co.* [(1962) 201 Cal.App.2d 868,] 871 [20 Cal.Rptr. 535].) The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law. [Citations.]

"On the other hand, if the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for rescission. [Citations.] Moreover, '[Q]uestions concerning illness or disease do not relate to minor indispositions but are to be construed as referring to serious ailments which undermine the general health.' [Citations.] Finally, as the misrepresentation must be a material one, 'An incorrect

answer on an insurance application does not give rise to the defense of fraud where the true facts, if known, would not have made the contract less desirable to the insurer. [Citations.]' [Citations.] And the trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed. [Citation.]

". . . . . . . . . . . . . . . . . . . . . . .

". . . [T]he burden of proving misrepresentation rests upon the insurer. [Citations.] Thus, the burden was on [the insurer] to negate to the satisfaction of the trier of fact the various plausible explanations for the incomplete answers on Thompson's application." (*Thompson* v. *Occidental Life Ins. Co.*, *supra*, 9 Cal.3d at pp. 915-916, 919.)

The *Thompson* court also noted:

"Of course, an insurance company is not precluded from imposing conditions precedent to the effectiveness of insurance coverage despite the advance payment of the first premium. However, as *Ransom* explains, any such condition must be stated *in conspicuous, unambiguous and unequivocal language* which an ordinary layman can understand. As the insurer is responsible for drafting the application, it is appropriate that he [*sic*] be required to choose plain and unequivocal terms. [Citations.]" (9 Cal.3d at p. 912, italics added.)

As Witkin states:

"The rule in insurance cases is codified: A material misrepresentation or concealment, though innocent, entitles the injured party to rescission. (Ins.C. 331, 359; *Telford* v. *New York Life Ins. Co.* (1937) 9 C.2d 103, 105, 69 P.2d 835; *California Western States Life Ins. Co.* v. *Feinstein* (1940) 15 C.2d 413, 423, 101 P.2d 696; *Standard Acc. Ins. Co.* v. *Pratt* (1955) 130 C.A.2d 151, 155, 278 P.2d 489; *Cohen* v. *Pennsylvania Mut. Life Ins. Co.* (1957) 48 C.2d 720, 725, 312 P.2d 241; *Thompson* v. *Occidental Life Ins. Co.* (1973) 9 C.3d 904, 916, 109 C.R. 473, 513 P.2d 353, *supra*, § 138; see 43 Am.Jur.2d, Insurance §§ 426, 430, 1006, 1015; 5 U.C.L.A. L.Rev. 332; 32 So. Cal. L. Rev. 234; 9 Hastings L.J. 207; 66 A.L.R.3d 749 [materiality of misrepresentation as to previous cancellations or rejections]; 72 A.L.R.3d 804 [nondisclosure or concealment of physical defects or conditions as avoiding coverage of automobile insurance policy]; cf. Ins.C. 10380 [false statement in application for life or disability policy does not bar recovery unless 'made with actual intent to deceive or unless it materially affected either the

acceptance of the risk or the hazard assumed by the insurer']; Ins.C. 1903 [limited effect of certain concealments in marine insurance]; 16 A.L.R.3d 789 [fire insurance, innocent overvaluation of loss of property insured].)" (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 415, p. 373.)

Sections 331 and 359 provide:

"Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." (§ 331.)

"If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." (§ 359.)

Section 10380 provides:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery under the policy unless such false statement was made with actual intent to deceive *or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.*" (Italics added.)

 The trial court had before it evidence from Western that the application would not have been accepted, and decedent would not have been found to be insurable, had he disclosed on the application the episode in August when he became unconscious from a narcotics overdose. Plaintiff acknowledged she was with decedent when he arrived at the hospital unconscious. She stated she did not know initially an overdose caused her husband's symptoms, but a doctor at the hospital told her narcotics were the cause. According to Dr. Young, the emergency room physician who treated decedent, decedent responded to medication used to counteract a narcotics overdose. He was therefore able to say with "some certainty" that decedent suffered a heroin overdose, although no tests were conducted to confirm this diagnosis. The doctor also noted multiple puncture sites on decedent's arms, which he believed were tracks left from injecting narcotics.

Plaintiff argues the trier of fact might not have believed Western's evidence that it would not have issued the policy had it known of the misrepresentation. She relies on the language we have quoted from *Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d at page 916: "And the trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed."

The *Thompson* judgment resulted from a verdict following a jury trial, and the court was simply following the well-settled principle that a jury need not

accept the testimony of any particular witness. Here, however, the evidence in support of the motion for summary judgment was uncontradicted. As we have noted, in *Kallen* v. *Delug, supra,* 157 Cal.App.3d 940, because plaintiff did not present controverting evidence regarding this issue of material fact, the trial court properly determined no factual dispute existed.

Consequently, we conclude the court did not err when it granted summary judgment in favor of Western. The only evidence before the court was that the Wilsons made misrepresentations and those misrepresentations were material. Western properly rescinded the insurance contract and its obligation to provide coverage terminated as of the date of application.

### DISPOSITION

Judgment affirmed. Costs on appeal to respondent.

Buckley, J., and Brown (G. A.), J.,* concurred.

A petition for a rehearing was denied November 25, 1991, and appellant's petition for review by the Supreme Court was denied January 23, 1992. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.