**SECURITY LIFE INSURANCE COMPANY OF AMERICA, a Minnesota corporation, Plaintiff,**

v.

**Garry L. MEYLING, an individual, Defendant.**

**Garry L. MEYLING, an individual, Counterclaimant,**

v.

**SECURITY LIFE INSURANCE COMPANY OF AMERICA, a Minnesota corporation, Counterdefendant.**

**No. CIV. S–95–1463 WBS/GGH.**

United States District Court, E.D. California.

Feb. 25, 1997.

---

Marilyn A. Monahan, Dorais and Wheat, Los Angeles, CA, for Security Life Insurance Company of America.

Clifford Wade Stevens, Neumiller and Beardslee, Stockton, CA, for Garry L. Meyling.

## MEMORANDUM AND ORDER

SHUBB, Chief Judge.

Plaintiff-insurer Security Life Insurance Company of America ("Security") seeks to rescind its insurance contract with defendant-insured Garry Meyling. Meyling's Amended Counterclaim contains claims for recovery of benefits and violation of claims procedures under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Both parties now move for summary judgment. Meyling also moves to dismiss, arguing that Security's rescission claim is preempted by ERISA.

The court must now determine whether the provisions of the California Insurance Code permitting rescission of an insurance policy survive ERISA preemption, and, if so, whether such provisions conflict with a recently enacted statute, Cal.Ins.Code §§ 10700 et seq. (hereinafter referred to as "AB 1672"), which guarantees the issuance and renewability of health insurance to employees of small employers.

As discussed below, the court finds that the provisions of the California Insurance Code permitting rescission of insurance contracts for material misrepresentations in the insurance application are not preempted by ERISA, that such provisions are consistent with AB 1672, and that, based on the undisputed facts, Security is entitled to rescind Meyling's insurance policy.

## I.

### BACKGROUND

Meyling is a co-owner, director and officer of a small business, Hubbard, Krause & Meyling, Inc., doing business as HKM Machine and Fabrication ("HKM"). HKM decided to purchase group health insurance from Security for its employees, including Meyling. HKM paid the premiums to Security, and was reimbursed by its employees. The parties do not dispute that the insurance plan set up by HKM is an ERISA plan, nor

**1424**

do they dispute that HKM is the plan's administrator.[1]

To determine the premiums HKM had to pay to Security, each HKM employee to be insured was required to fill out an application. Among other things, the application asked each applicant to describe his or her medical history. In that portion, Meyling's application contained several misrepresentations. Within the five years preceding the application, Meyling had been treated for high blood pressure, back pain and back spasms, for which he received prescription medication, and had been admitted to a hospital emergency room for hyperventilation or "panic disorder." On his application, however, Meyling indicated that he had never experienced, been treated for, or received medication for any of these problems.

Based on these representations of Meyling's health history, Security issued a policy to HKM at a discounted premium. The parties do not dispute that, had Security been correctly informed of Meyling's history, the premium would have been thousands of dollars higher because Meyling's true history indicated a greater risk of future health problems than the history represented to Security.

On the other hand, the parties do dispute how the misrepresentations got on Meyling's insurance application. Meyling claims that Robert Silva, an insurance agent who sold "Mega Life" insurance,[2] told Meyling that the insurance company was only interested in medical history concerning long term, chronic problems, despite the language of the application questionnaire.[3] Additionally,

Meyling claims that Silva himself actually answered some of the questions. Silva, however, denies either that he advised Meyling on how to complete the questionnaire or that he answered the questions himself.

After Security issued the policy, it asked Meyling to once again review his answers to the medical history questions, and advised him that a failure to disclose accurate information could result in rescission of the insurance contract. Meyling did not make any changes.

Eventually, Meyling was diagnosed with a heart aneurysm and required hospitalization. He accrued significant medical bills, and sought coverage under the HKM group insurance policy with Security. Security became aware of the misrepresentations in Meyling's application, and sued to rescind Meyling's insurance policy. Meyling brought state law tort and breach of contract counterclaims challenging Security's failure to pay under the policy, and filed an amended counterclaim stating these claims under ERISA.

## II.

### *DISCUSSION*

#### A. ERISA Preemption of Plaintiff's Rescission Claim

■ Security bases its claim for rescission on Cal.Ins.Code §§ 331, 359 and 10380. These provisions allow an insurer to rescind insurance coverage when the insured conceals or misrepresents material facts, either intentionally or unintentionally, in an insurance application.[4] The court must decide

---

1. HKM is the plan "sponsor" under the terms of the insurance application to Security. Where a plan "administrator" is not specifically designated, the sponsor is deemed the administrator. 29 U.S.C. § 1002(16)(A)(ii).

2. The relationship between Silva and Security is not entirely clear.

3. The question concerning high blood pressure reads "[h]as any person applying EVER had, been told of having, or had any known indication of, or consulted a physician or practitioner or taken medication, or had or been advised to have tests or surgery for ... high blood pressure ...?" (emphasis in original).

4. Cal.Ins.Code § 331 provides:

Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.

Cal.Ins.Code § 359 provides:

If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false.

Cal.Ins.Code § 10380 provides:

The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery under the policy unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of

whether ERISA preempts these provisions insofar as they would allow an insurer to rescind an employee's coverage under an ERISA plan.

ERISA preempts all state law claims that "relate to" an employee benefit plan. 29 U.S.C. § 1144(a). Because Security seeks to rescind an employee's coverage under an ERISA plan, its claim clearly relates to an ERISA plan. Thus, Security's state law rescission claims will be preempted by ERISA unless they fall within the "savings clause."

█ ERISA's savings clause provides that ERISA does not preempt "any law of any State which regulates insurance ..." 29 U.S.C. § 1144(b)(2)(A). A state law regulates insurance, and is therefore saved from preemption, if it: (1) is limited to the insurance industry; (2) has the effect of transferring or spreading a policyholder's risk; and (3) is an integral part of the relationship between the insured and insurer. *Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404, 409 (9th Cir.1995), *cert. denied,* ––– U.S. –––, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995) (citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 743, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985)).

Each of those three elements applies here. First, by their express terms, Cal.Ins.Code §§ 331, 359 and 10380 apply only to contracts of insurance.

Second, the provisions have the effect of fairly transferring or spreading the policyholder's risk by allowing insurers to set appropriate premiums. Premiums determine how risk is allocated among all policyholders. *See Slagle v. ITT Hartford,* 102 F.3d 494, 498 (11th Cir.1996) ("[t]here is no doubt that appellee's conduct in setting the [association's] premium rate has the effect of spreading and transferring a policyholder's risk"); *Uniforce Temp. Personnel, Inc. v. National Council on Compensation Ins., Inc.,* 87 F.3d 1296, 1300 (11th Cir.1996) (insurer's rate-making activities have the effect of spreading the policyholder's risk); *In re Workers' Compensation Ins. Antitrust Litig.,* 867 F.2d 1552, 1556 (8th Cir.1989) ("it is axiomatic that the risk or the hazard assumed by the

the fixing of rates is central to transferring and spreading the insurance risk").

Insurers cannot be expected to set appropriate premiums without having complete and accurate background information from the insured. Insureds who misrepresent their health history on insurance applications will have lower premiums and therefore will not be allocated their fair share of the risks. The rescission statutes exist to discourage applicants from withholding material information necessary for insurers to set the premiums that fairly and accurately spread the risk among all policyholders.

Third, full and accurate disclosure, the prerequisite for determining the appropriate premium and the absence of which can lead to rescission of the insurance policy, is an integral part of the relationship between the insured and insurer. *See Uniforce Temp. Personnel,* 87 F.3d at 1300 (the "premium is an integral part of the policy relationship between the insurer and the insured").

Meyling argues that the Fifth Circuit's decision in *Tingle v. Pacific Mutual Ins. Co.,* 996 F.2d 105 (5th Cir.1993), compels the opposite result. In *Tingle,* the Fifth Circuit ruled that the Louisiana statute permitting rescission of an insurance contract for material misrepresentations in the insurance application was preempted by ERISA. *Id.* at 108–09.

This court cannot agree with the rationale or holding in *Tingle.* In *Tingle,* the Fifth Circuit relied solely on the argument that the act of rescinding an individual insurance policy does nothing to spread or transfer the cost or risk of health coverage among all policyholders. *Id.* Even assuming that much is true, the Fifth Circuit failed to consider the significance of the *existence* of the rescission statutes.

Without an effective mechanism by which an insurer can deter persons from misrepresenting their health history and obtaining unfairly low premiums, the collective risk assumed by the insurer will not be properly apportioned among all policyholders. The existence of the rescission statutes therefore has the effect of transferring or spreading the risk or the hazard assumed by the insurer.

the risk among the policyholders in a more equitable manner.

█ Because Cal.Ins.Code § 331, 359 and 10380 meet all three relevant criteria in determining whether a law regulates insurance, they are not preempted by ERISA.[5] *See also Martin v. Pate,* 749 F.Supp. 242, 244 n. 2 (S.D.Ala.1990), *aff'd,* 934 F.2d 1265 (11th Cir.1991) (stating that Alabama's law permitting rescission of an insurance policy for fraud in the insurance application is "plainly state law which regulates insurance" and thus are not preempted by ERISA). The court therefore must address the merits of the parties' cross-motions for summary judgment on Security's claim for rescission.

**B. Cross–Motions for Summary Judgment on the Rescission Claim**

Security moves for summary judgment on its rescission claim, arguing that Meyling's misrepresentations were material and therefore permit rescission as a matter of law. Meyling also moves for summary judgment on Security's claim for rescission, arguing that AB 1672 prohibits Security's rescission remedy.

**1. Standard of Review**

Summary judgment is appropriate if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**2. Analysis**

**a. AB 1672**

█ AB 1672 addresses the perceived problem of an inability of small businesses to acquire health insurance plans for their employees. Thus, AB 1672 requires insurers offering insurance to small businesses to provide such insurance to all employees, regardless of any preexisting conditions or illnesses the employees may have. Cal.Ins.Code § 10707.

AB 1672 does not mention the rescission statutes, and does not specifically prohibit rescission as a remedy for misrepresentation. It does state, however, that "[n]otwithstanding any other provision of law, no provision of this chapter shall be construed to limit the applicability of any other provision of the Insurance Code unless such provision is in conflict with the requirements of this chapter." Cal.Ins.Code § 10718.7. Thus, an insurer may still rescind an insurance policy unless such remedy conflicts with the requirements of AB 1672.

---

5. Accordingly, the court does not follow those courts creating a federal common law right of rescission under ERISA, a dangerous venture. *See Coots v. United Employers Fed'n,* 865 F.Supp. 596, 602–03 (E.D.Mo.1994); *Espinosa v. Guardian Life Ins.,* 856 F.Supp. 711, 716–17 (D.Mass. 1994); *Tingle v. Pacific Mutual Ins. Co.,* 837 F.Supp. 191, 192–93 (W.D.La.1993). Courts "must proceed cautiously in creating additional rights under the rubric of federal common law, and remember that we do not possess *carte blanche* authority to 'use state common law to rewrite a federal statute.'" *Provident Life & Acc. Ins. Co. v. Waller,* 906 F.2d 985, 992 (4th Cir. 1990) (quoting *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986)). "[F]ederal courts, unlike their state counterparts, are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers." *Northwest Airlines, Inc. v. Transport Workers Union of Am.,* 451 U.S. 77, 95, 101 S.Ct. 1571, 1582–83, 67 L.Ed.2d 750 (1981). Thus, courts should only fashion those remedies that are "appropriate and necessary to effectuate the purposes of ERISA." *Provident Life,* 906 F.2d at 992 (quoting *U.S. Steel Mining Co. v. District 17, United Mine Workers of Am.,* 897 F.2d 149, 153 (4th Cir.1990)).

Creation of a federal common law right of rescission in this instance is neither necessary nor appropriate. The Insurance Code rescission statutes represent the longstanding policy of the California legislature to encourage full disclosure of an applicant's health history. The court cannot envision any interpretation of ERISA that would run counter to such policy. Moreover, because Congress did not intend ERISA to preempt state statutes regulating insurance, the better course of action is for the court to look to the Insurance Code rescission statutes and the multitude of cases interpreting them as the controlling law rather than attempt to create a federal common law right of rescission, the parameters of which are uncertain.

Meyling argues that the rescission statutes conflict with AB 1672. His primary theory is that the remedy of rescission is inconsistent with AB 1672's requirement that the policy be issued in the first place, regardless of health history. Because AB 1672 requires insurers to provide insurance to all employees, Meyling suggests that nothing misrepresented can be material: if Security had known about his high blood pressure, back pain and hyperventilation to begin with, AB 1672 would have precluded it from denying him insurance; therefore, he argues, having found out about these conditions later, Security cannot deny the insurance through rescission, but rather it must continue to insure Meyling, albeit at a higher premium.

To the extent Meyling argues that a higher premium standing alone is not material, his argument conflicts with the decision in *Old Line Life Ins. Co. v. Superior Court*, 229 Cal.App.3d 1600, 1604–06, 281 Cal.Rptr. 15 (1991). In *Old Line Life*, the court held that the fact that an insurance policy would or should have been issued absent a material misrepresentation, albeit at a higher premium, did not prohibit rescission. Although it was undisputed that the policy would have been issued at a higher premium if the insured correctly represented her status as a smoker, rescission was allowed since the risk insured against was increased but the premiums were not. *Id.*

Meyling argues that the California Legislature intended AB 1672 to overrule *Old Line Life*. To support his argument, he quotes the preamble of AB 1672, which states, in part:

It is the intent of the Legislature to guarantee the availability and renewability of health insurance to small employers.... Carriers in the small employer market are required to rate within prescribed limits, to guarantee the issuance and renewability of health coverage, to guarantee the continuity of coverage, ...

Cal.Legis.Servs. Ch. 1128, Section 1 (1992). When read in conjunction with the statutory language, however, the preamble actually supports the opposite conclusion—that AB 1672 was *not* intended to preclude the insurer's rescission remedy.

The language of AB 1672 illustrates that, notwithstanding the language of the preamble, the California Legislature did not intend to provide an absolute guarantee of issuance *and* renewability of coverage to each individual employee. AB 1672 expressly states that renewal is not required in the case of "fraud or misrepresentation by the policyholder, contractholder, or small employer or, *with respect to coverage of individual enrollees, the enrollees or their representatives.*" *Id.* § 10713(b) (emphasis added). Thus, despite the preamble's language concerning "guaranteed" renewability, an insurer need not renew the coverage for an individual enrollee if the enrollee is guilty of a fraud or misrepresentation.

There is no reason for the court to treat an employee's fraud or material misrepresentation differently when examining the relevance of AB 1672's policy of "guaranteed issuance" as opposed to the policy of "guaranteed renewability." If AB 1672 creates an exception to its promise of guaranteed renewability, it would be consistent to allow the same exception to its promise of guaranteed issuance. The Insurance Code sections permitting rescission provide such an exception. Thus, not only is AB 1672 consistent with the Insurance Code provisions permitting rescission, but the language allowing non-renewal in certain circumstances actually supports the conclusion that AB 1672 was not intended to prohibit the application of the rescission statutes.

Meyling contends that denial of renewal pursuant to Cal.Ins.Code § 10713(b) is the exclusive remedy available to an insurer injured by fraud or misrepresentations. It is inconceivable, however, that the California legislature intended to produce the result urged by Meyling. Meyling's interpretation of AB 1672, were it to be adopted by California courts, would have the effect of encouraging and facilitating insurance fraud. An insured could lie with impunity on his or her application and receive a low, favorable premium, having misled the insurer into believing that he or she is in perfect health. Were he or she to fall ill and require coverage, the insurer would be forced to provide such coverage, regardless of the insured's misrepre-

sentations. The insured would merely have to pay the insurer the difference between the premiums he or she had been paying and those he or she should have been paying. But at that point, repaying the difference would be a bargain.

On the other hand, if the insured does not fall ill and require coverage, he or she would continue to pay the lower premium, despite being a higher insurance risk, until the insurer discovers the misrepresentation. But until the insured falls ill and demands benefits, the insurer is not likely to discover the misrepresentations. There is, in effect, no downside to the misrepresenting insured.

Meyling argues that this is exactly the dramatic result that AB 1672 requires. To bolster his argument, Meyling produces three pieces of evidence: (1) part of AB 1672's legislative history from the office of Assemblyman Burt Margolin; (2) a letter from Peter Groom, chief of Policy Approval for the California Department of Insurance; and (3) the deposition of Marsha Seeley, Senior Counsel for the Department of Insurance. None of this evidence, however, persuades the court to adopt Meyling's interpretation of AB 1672.

The legislative history is entitled "Analysis of the Carrier Coalition Proposal," and is a committee report on AB 1672. It does not in any way refer to how AB 1672 would impact the Insurance Code's rescission statutes. It merely states, as does the statute itself, that AB 1672 guarantees health insurance coverage and renewal to all employees of small businesses, regardless of their health status or risk at the time of issuance. It is silent as to what remedies the insurer has upon discovery of a material misrepresentation.

■ Peter Groom, on the other hand, specifically states in his letter that the California Department of Insurance construes AB 1672 to prohibit rescission for material misrepresentations of health history in applications for guaranteed insurance. Marsha Seeley, the attorney for the Department of Insurance primarily responsible for the day-to-day implementation of AB 1672, supports Groom's opinion in her deposition. While the court may consider the official interpretation of the agency authorized to enforce a statute,

final responsibility for interpretation of the law rests with the courts. *See Whitcomb Hotel, Inc. v. Cal. Emp. Comm'n,* 24 Cal.2d 753, 757, 151 P.2d 233 (1944).

■ Both Groom's letter and Seeley's deposition testimony fail to persuade the court for two reasons. First, they are not formal agency pronouncements, but evidence created for and given to Meyling solely for the purposes of this litigation. Reid A. McClaran, Deputy General Counsel for the Department of Insurance, indicates that Groom's and Seeley's opinions do not represent the official views of the Department, and that the Department does not issue formal opinion letters in connection with private litigation. The opinions expressed by Groom and Seeley therefore are far from an official Department interpretation of the statute, and are entitled to little or no deference. *See Piper v. Chris–Craft Indus., Inc.,* 430 U.S. 1, 41 n. 27, 97 S.Ct. 926, 949 n. 27, 51 L.Ed.2d 124 (1977) (courts should only give deference when the agency has rendered binding and consistent official interpretation of the statute over a long period of time).

■ Second, and more importantly, Groom's and Seeley's opinions misinterpret the relationship between AB 1672 and the Insurance Code rescission statutes. Both Groom and Seeley admit that they did not consider the application of the rescission statutes in forming their opinions. In any case, they have no authority to do so. Determining the proper relationship between related statutes is exclusively within the province of the courts. *Bradley v. State Farm Mut. Auto. Ins. Co.,* 212 Cal.App.3d 404, 408, 260 Cal.Rptr. 470 (1989) (citing, *California Employment Stabilization Comm'n v. Payne,* 31 Cal.2d 210, 213, 187 P.2d 702 (1947)).

■ Moreover, the court need not consider legislative history and department interpretations when the language of the statutes is unambiguous. *See Straub v. A.P. Green, Inc.,* 38 F.3d 448, 454 (9th Cir.1994). As discussed above, allowing rescission as a remedy where an insured has made material misrepresentations on the insurance applica-

tion does not conflict with any portion of AB 1672.

Because the Insurance Code's rescission statutes are wholly consistent with AB 1672, Meyling's motion for summary judgment must be denied. Accordingly, the court must next determine whether Security is entitled to summary judgment on its rescission claim.

### b. Materiality of Misrepresentations

 There is no dispute that Meyling misrepresented his health history. An insurer may rescind an insurance policy if such misrepresentations are material. Cal.Ins. Code §§ 359, 360, and 10380. In general, a misrepresentation in an insurance application is material where the answers, had they been true, would have affected the insurer's decision to accept the risk of insurance at the premium price agreed to. *See Merced County Mut. Fire Ins. v. State,* 233 Cal.App.3d 765, 772, 284 Cal.Rptr. 680 (1991); *Old Line Life,* 229 Cal.App.3d at 1605–06, 281 Cal. Rptr. 15. Thus, in *Old Line Life,* rescission was granted where the insured failed to state on the life insurance application that she smoked. Had the insurer known the truth, it still would have issued the policy, but at a higher premium. Because the risk actually insured against was not the risk that the insurer agreed to assume at that premium, the misrepresentations were material and rescission was proper. *Id.*

Meyling seeks to avoid summary judgment by claiming that factual issues exist regarding the cause of his misstatements. Specifically, Meyling claims that he relied on the statements of Silva that Security was only interested in long-term, chronic medical problems when Meyling filled out his application. He claims that *McLean Hosp. Corp. v. Lasher,* 819 F.Supp. 110, 131 (D.Mass.1993), establishes that the circumstances surrounding the misrepresentation of health history can create an issue of materiality.

 Under California law, however, materiality of a misrepresentation is a question of law. Cal.Ins.Code § 334 (materiality determined not by the event, but solely by the insurer's reasonable reliance on the misrepresentation); *Merced County Mut. Fire Ins.,* 233 Cal.App.3d at 772, 284 Cal.Rptr.

680. The fact that the misrepresentation may have been innocent or accidental does not matter. Cal.Ins.Code §§ 331, 359, 360, and 10380; *Telford v. New York Life Ins. Co.,* 9 Cal.2d 103, 69 P.2d 835 (1937); *Wilson v. Western Nat. Life Ins. Co.,* 235 Cal.App.3d 981, 994, 1 Cal.Rptr.2d 157 (1991). A misrepresentation is material and rescission is available if the insurer was misled into accepting the risk *or* in fixing the premium rate. *Old Line Life,* 229 Cal.App.3d at 1604–05, 281 Cal.Rptr. 15.

 Here, there is no dispute that, had Security been aware of Meyling's treatment for high blood pressure, back pains and hyperventilation, it would have charged a higher premium. Meyling's misrepresentations were therefore material. Moreover, the fact that Security would have or should have issued an insurance policy absent a material misrepresentation, albeit at a higher premium, does not prohibit rescission. *Id.* at 1604–66, 281 Cal.Rptr. 15. Security is therefore entitled to summary judgment on its rescission claim.

### III.

### *CONCLUSION*

The provisions of the California Insurance Code permitting rescission of an insurance policy for material misrepresentations in an insurance application fall within ERISA's "savings clause" and are not preempted by ERISA. The undisputed material facts show that Meyling made material misrepresentations in his insurance application, entitling Security Life to rescind his policy.

Accordingly, Security's motion for summary judgment will be granted, and Meyling's counterclaims under ERISA for benefits under the policy must be dismissed.

IT IS THEREFORE ORDERED defendant's motion to dismiss be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be, and the same hereby is, DENIED, and that

plaintiff's motion for summary judgment be, and the same hereby is, GRANTED.