646 So.2d 784 (1994)
AMERICAN INSURANCE ASSOCIATION, National Association of Independent Insurers, and Florida Windstorm Underwriting Association, Appellants,
v.
FLORIDA DEPARTMENT OF INSURANCE and Florida Property and Casualty Joint Underwriting Association, Appellees.
Nos. 94-1211, 94-1214 and 94-1178.
District Court of Appeal of Florida, First District.
November 30, 1994.
*785 Caleb L. Fowler, Washington, DC, and Thomas J. Jones and Susan L. Turner, Holland & Knight, Tallahassee, for appellant American Ins. Ass'n.
Vincent J. Rio, III and Mark K. Delegal of Taylor, Day & Rio, Tallahassee, for appellant Nat. Ass'n of Independent Insurers.
Christine R. Milton of Mahoney, Adams & Criser, Jacksonville and J. Riley Davis and David A. Yon, and Daniel C. Brown of Katz, Kutter, Haigler, Alderman, Marks & Bryant, Tallahassee, for appellant Florida Windstorm Underwriting Ass'n.
William O'Neil, Daniel Y. Sumner, Dennis Silverman and Robert Prentiss, Dept. of Ins., for appellee the Florida Dept. of Ins.
Michael Colodny and Doris Vigo of Colodny, Fass & Talenfeld, Ft. Lauderdale, for appellee Florida Property and Cas. Joint Underwriting Ass'n.
Stephen C. Burgess, Ins. Consumer Advocate, Tallahassee, Intervenor.
KAHN, Judge.
These consolidated appeals are from an Immediate Final Order (IFO) issued by the Department of Insurance (DOI) to the Florida Windstorm Underwriting Association (FWUA) and the Florida Property and Casualty Joint Underwriting Association (FPCJUA) regarding windstorm coverage. Appellants contend, among other things, that (1) the order did not sufficiently articulate an emergency and no emergency existed and (2) even if the order sufficiently articulated an emergency, the order violates the governing statute, section 627.351(2), Florida Statutes. We agree and reverse.
The legislature created FWUA, a joint underwriting association composed of property insurers licensed to do business in Florida, in 1970 because the voluntary market was unable to provide windstorm-only insurance in Florida's high-risk coastal area. § 627.351, Fla. Stat. (1970). By statute, all insurers licensed to transact property insurance on a direct basis in this state must belong to FWUA and must provide windstorm coverage to applicants from areas determined to be eligible,[1] who are in good faith entitled to, but unable to, procure such coverage through ordinary means. § 627.351(2), Fla. Stat. Member insurers are required to pay for the association's losses through assessments. FWUA's Plan of Operation, which was approved by DOI, limits the maximum coverage available to one million dollars ($1,000,000) per residential commercial structure. Such structures include apartment buildings and residential condominiums.
On August 24, 1992, Hurricane Andrew struck Florida and caused eighteen billion dollars ($18,000,000,000) in insured losses. Many insurers attempted to withdraw from the state. DOI, by enactment of emergency rules, prevented licensed insurers from cancelling residential policies. No such protection existed for commercial policies, and by *786 early 1993, consumers began reporting that licensed insurance companies had ceased writing all together. Unauthorized insurers known as surplus line carriers[2] took the place of licensed carriers and offered coverage conditioned upon significant premium increases. DOI, by order entered in February 1993, expanded the areas eligible for FWUA's coverage from the traditionally underwritten property 1000 feet from the ocean to those areas in Dade and Broward counties east of I-95. This order virtually doubled the geographical area eligible for FWUA coverage. In an effort to further alleviate the mounting problem of unavailability of adequate coverage for commercial lines, the Florida Legislature, through passage of Chapter 92-345, Laws of Florida, eliminated the eligibility requirements for coverage under FWUA and thereby established a statewide ability of FWUA to provide some forms of windstorm coverage. However, in enacting Chapter 93-401, Laws of Florida, in June, the legislature readopted the eligibility criteria and created the Study Commission on Property Insurance which was charged with examining the feasibility of providing coverage to commercial risks through the FPCJUA. Ch. 93-401, § 2, at 2883, § 3, at 2884, Laws of Fla.; § 627.351, Fla. Stat. (Supp. 1992).
During the November, 1993 special session, the legislature sought to make additional insurance available for residential commercial structures that could not obtain such insurance in the voluntary market. The legislature activated FPCJUA, a joint underwriting association, as a temporary means of addressing the problem and provided a two-year sunset provision. Ch. 93-410, § 14, at 23-29, Laws of Fla. (codified by 627.351(5), Fla. Stat. (Supp. 1994)).[3] All insurers authorized in this state to write property insurance, as defined in section 624.604, or casualty insurance, as defined in section 624.605, are required by section 627.351(5) to be members of FPCJUA. The FPCJUA, through its member insurance companies, writes property and casualty insurance to eligible persons who are in good faith entitled to such coverage, but are unable to obtain such property or casualty insurance *787 coverage, including excess coverage, through the voluntary market. Section 627.351(5), as amended in November 1993, required DOI to adopt by rule a joint underwriting plan for FPCJUA and prohibited FPCJUA from underwriting "the types of insurance for which ... [a] joint underwriting plan is authorized under ... subsection (2) [i.e., windstorm coverage through FWUA]... ." Significantly, the legislature did not amend the statutory mandate for FWUA's coverage or for the separation of FPCJUA from FWUA and other risk apportionment pools.
On April 5, 1994, DOI, pursuant to section 120.59(3), issued an Immediate Final Order (IFO) directed to FPCJUA and FWUA. The order adopted on an emergency basis FPCJUA's Manual of Rules of Practice and Rates and Rate Procedures including a portion which permitted FPCJUA to provide windstorm insurance coverage in areas of this state formerly exclusively served by the FWUA. The order provides, in part:
In FWUA eligible areas seaward of the intracoastal waterway including all of Monroe County, the FPCJUA policy will provide limits for windstorm and hail coverage in excess of $1,000,000 on each separately described building and/or its contents.
In all other areas including in land from the intracoastal waterway in FWUA eligible areas, the FPCJUA will write primary windstorm and hail coverage.
The IFO requires that in all FWUA eligible areas seaward of the Intracoastal Waterway, FPCJUA policies must immediately provide coverage for windstorm in excess of the $1,000,000 written by FWUA, and in all other FWUA eligible areas (inland of the Intracoastal), FPCJUA must write primary windstorm coverage. The order is silent on whether DOI intends to revoke FWUA's authorization to provide windstorm coverage in these inland areas or merely supplement it with FPCJUA's primary coverage that includes windstorm. The order also instructed FPCJUA and FWUA to meet and submit a joint written plan of consolidated rates, forms, coverages and underwriting guidelines, including the feasibility of using single policies under which FPCJUA would furnish all primary insurance on residential commercial structures and FWUA would reinsure the windstorm risk. DOI extended the deadline for compliance to July 5, 1994.
On April 11, 1994, FWUA filed an appeal of the IFO. Two trade associations, the American Insurance Association (AIA)[4] and National Association of Independent Insurers (NAII)[5] also filed appeals from the IFO. On May 11, 1994, this court issued an order consolidating the appeals filed by FWUA, AIA and NAII. Intervenor Insurance Consumer Advocate was granted leave to intervene in this appeal.
We reverse the IFO because it fails to state with particularity facts sufficient to establish an emergency necessitating summary action and because the order violates the plain language of section 627.351(5), Florida Statutes. Section 120.59(3) provides:
If an agency head finds that an immediate danger to the public health, safety, or welfare requires an immediate final order, it shall recite with particularity the facts underlying such findings in the final order.
In Commercial Consultants Corp. v. Dep't of Business Regulation, 363 So.2d 1162, 1164-1165 (Fla. 1st DCA 1978), this court explained that the Administrative Procedures Act requires "specific findings of fact to support summary agency action.... Because fundamental (due process) rights are *788 abridged, the agency's statement of reasons for acting `must be factually explicit and persuasive concerning the existence of a genuine emergency.'"
Nowhere in DOI's six-page IFO appears a finding of an immediate danger to the public health, welfare or safety or a finding of an emergency. The only language suggesting an emergency is the statement: "Wherefore, there is a need for immediate action because the automatic activation of the FPCJUA for residential commercial risks and the persistence of the grounds for such activation and the imminence of hurricane season provide no other option for these risks to obtain adequate coverage." In our view, the order relies upon conclusory findings which are neither "factually explicit" nor justify summary action based on an emergency or an immediate danger to the public health, safety or welfare.
The order recites as the primary reason for activating FPCJUA the unavailability of coverage for condominium associations, apartment buildings, common elements of homeowners associations, and other commercial coverages of residences for risk of windstorm loss due to hurricane exposure. DOI found FWUA's $1,000,000 windstorm coverage cap in FWUA eligible areas was not adequate to meet responsible or prudent business practices for residential commercial properties valued in excess of $1,000,000. DOI indicated that the "imposition on Florida policyholders of duplicative, inconsistent or piecemeal coverage by the FWUA or FPCJUA, where avoidable through coordinated action, is violative of the policyholder's right to economic delivery of comprehensive coverage." The order states:
Only the FPCJUA can provide coverage without any inconsistencies that would be detrimental to the property owner. Providing primary windstorm coverage through the FWUA does not properly coordinate reasonable levels of coverage at a reasonable rate modification for risks inland of the intracoastal waterways and such activity or practice is unfair or unreasonable or otherwise inconsistent with the provisions of Chapter 627.
These conclusions and assertions do not justify summary action. Significantly, the IFO is devoid of facts establishing the inadequacy of windstorm coverage in FWUA eligible areas. FWUA's $1,000,000 commercial residential cap in an area where structures are valued at over $1,000,000 does not establish inadequate coverage. Additional coverage available beyond the $1,000,000 initial coverage may be available in the voluntary market. Moreover, DOI approved the $1,000,000 cap and could have requested or ordered FWUA to increase the cap if coverage proved inadequate.
DOI contends, circularly, that FPCJUA was activated by Ch. 93-410, because adequate windstorm insurance coverage was not available and the legislative activation of FPCJUA somehow proved the inadequacy of windstorm coverage in FWUA areas. However, FPCJUA was activated under an amendment to section 627.351(5) which is entitled "Property and Casualty Insurance Risk Apportionment" and not under section 627.351(2) which is entitled "Windstorm Insurance Risk Apportionment." The amendment to section 627.351(5) does not mention windstorm coverage, much less windstorm coverage in FWUA eligible areas. Appellees rely on chapter 93-410's amendment of section 627.351(5)(a)1.d.(II) which reads, in part:
[A] classification is immediately eligible for coverage if the risk is eligible under this paragraph and if the department determines, after consulting with the insurers authorized to write property and casualty insurance in this state, that any class, line or type of coverage of property or casualty insurance is not available at adequate levels from insurers authorized to transact and actually write that kind and class of insurance in this state or in a particular geographic area.
They contend that DOI found FWUA's coverage was inadequate, and therefore DOI properly ordered FPCJUA to provide additional windstorm coverage. However, the legislature chose not to amend the restriction in section 627.351(5) forbidding adoption of a joint underwriting plan to equitably apportion "the types of insurance that are included within property insurance or casualty insurance *789 for which an equitable apportionment plan, assigned risk plan, or joint underwriting plan is authorized under ... subsection (2) [Windstorm Insurance Risk Apportionment]." Therefore, even after the chapter 93-410 amendments, DOI did not have the authority to allow FPCJUA to write windstorm coverage in FWUA eligible areas.
DOI contends that the IFO was necessary because policyholders in FWUA eligible areas were entitled to multi-peril coverage, including windstorm coverage in a single policy. Appellees have provided no authority, nor have we located any authority, to support the conclusion that policyholders are entitled to multiple coverages under a single policy. Policyholders who buy their insurance from private insurers in the voluntary market or other FPCJUA applicants who are located in seaward FWUA areas have no right to comprehensive insurance in a "single" policy. One of the reasons for apportionment is to apportion the risk to appropriate insurers. The goal is not to provide coverage under a single policy.
DOI, in ordering that FPCJUA take over FWUA's traditional role and coverage by providing primary windstorm coverage in inland FWUA eligible areas and excess windstorm coverage in seaward areas, also overlooked the temporary nature of FPCJUA which was scheduled to sunset within two years. The sunset provision mitigates against any supposed legislative intent to have FPCJUA take over FWUA's role in providing windstorm coverage or to consolidate the two.
Had DOI recited with particularity explicit and persuasive facts justifying an IFO, reversal would nevertheless be mandated by section 627.351(5). Section 627.351(5) provides in part:
The department shall adopt by rule a joint underwriting plan to equitably apportion among insurers authorized in this state to write property insurance as defined in s. 624.604 or casualty insurance as defined in s. 624.605, the underwriting of one or more classes of property insurance or casualty insurance, except for the types of insurance that are included within property insurance or casualty insurance for which an equitable apportionment plan, assigned risk plan or joint underwriting plan is authorized under ... subsection (2) [Windstorm Insurance Risk Apportionment].
The statute's plain language prohibits DOI from allowing joint underwriters to write the type of insurance for which another joint underwriting plan is authorized. Windstorm insurance is already covered in section 627.351(2) by FWUA, and therefore DOI may not order FPCJUA to write windstorm insurance in FWUA eligible areas. The statutory restriction has not been amended or superseded.
DOI attempts to avoid this restriction by asserting that FPCJUA's multi-peril coverage, including windstorm coverage, is a different type of insurance than FWUA's windstorm only coverage and is therefore not precluded by section 627.351(5). Appellees contend that an agency's interpretation of a statute which it is charged with enforcing should be given great discretion. However, in explaining the general rule giving agencies broad discretion, this court has stated:
[W]e did not mean that any conceivable construction of a statute must be approved irrespective of how strained or ingenious reliant on implied authority might be; rather ... only a permissible construction by the agency that comports with and effectuates discerned legislative intent will be sustained by the court.
State Bd. of Optometry v. Florida Soc. of Ophthalmology, 538 So.2d 878, 885 (Fla. 1st DCA 1988). Here, FPCJUA is statutorily excluded from writing "types of insurance" already provided by FWUA. The statute suggests no exception for a multi-peril policy. DOI's interpretation would render the statute void and violate unambiguous legislative intent.
REVERSED.
ZEHMER, C.J., and VAN NORTWICK, J., concur.
NOTES
[1] These areas include Monroe County and portions of 26 other counties with high hurricane risk.
[2] Section 626.915, Florida Statutes, provides, in part:

626.915 Surplus lines insurance authorized.  If certain insurance coverages of subjects resident, located, or to be performed in this state cannot be procured from authorized insurers, such coverage, hereinafter designated "surplus lines," may be procured from unauthorized insurers, subject to the following conditions:
(1) The insurance must be eligible for export under s. 626.916 or s. 626.917;
(2) The insurer must be an eligible surplus lines insurer under s. 626.917 or 626.918;
(3) The insurance must be so placed through a licensed Florida surplus lines agent; and
(4) The other applicable provisions of this Surplus Lines Law must be met.
[3] Section 627.351, Florida Statutes (Supp. 1994), provides in part:

(5) PROPERTY AND CASUALTY INSURANCE RISK APPORTIONMENT.  The department shall adopt by rule a joint underwriting plan to equitably apportion among insurers authorized in this state to write property insurance as defined in s. 624.604 or casualty insurance as defined in s. 624.605, the underwriting of one or more classes of property insurance or casualty insurance, except for the types of insurance that are included within property insurance or casualty insurance for which an equitable apportionment plan, assigned risk plan, or joint underwriting plan is authorized under ... subsection (2) [Windstorm Insurance Risk Apportionment].
....
(a)1.d.(II) As an alternative to the procedure specified in sub-sub-subparagraph (I), a classification is immediately eligible for coverage if the risk is eligible under this paragraph and if the department determines, after consulting with the insurers, authorized to write property and casualty insurance in this state, that any class, line, or type of coverage of property or casualty insurance is not available at adequate levels from insurers authorized to transact and actually write that kind and class of insurance in this state or in a particular geographic area... .
(a) 1.g The Legislature finds that the market conditions which this subsection is intended to remedy have arisen with respect to coverage for condominium associations, apartment buildings, common elements of homeowners associations and other commercial coverages of residences. Therefore, coverage under this subsection is hereby activated for condominium associations, apartment buildings, common elements of homeowners associations and other commercial coverages of residences. Such coverage shall continue to be provided under this subsection until coverage is deactivated pursuant to sub-sub-subparagraph (II) or sub-sub-subparagraph (III).
[4] AIA is a national trade association composed of approximately 270 major property and casualty insurers, many of which are doing business in Florida. Section 627.351(5) requires all of AIA's member insurers authorized to underwrite property or casualty insurance in the state to participate in the FPCJUA and thus by assessment to pay for any FPCJUA losses.
[5] NAII is a not-for-profit trade association representing more than 500 major insurance company members that provide property and casualty insurance throughout the U.S. More than 130 members are licensed to do business in Florida and account for more than $1.5 billion in insurance premiums in Florida each year. Many members who are either domiciled in or writing property and casualty insurance in Florida are required to participate in FPCJUA by virtue of section 627.351(5). Many are also FWUA members. In addition NAII is a statutorily designated member of the board of FPCJUA. § 627.351(5)(a)11.