United States Court of Appeals,

Eleventh Circuit.

No. 95-4589.

UNIFORCE TEMPORARY PERSONNEL, INC., Uniforce Services, Inc., Plaintiffs-Appellants,

v.

NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC., a Florida not for profit corporation, National Council on Compensation Insurance, an unincorporated business entity, National Workers' Compensation Reinsurance Pool, an unincorporated business entity, Does 1-3, Defendants-Appellees,

Liberty Mutual Insurance Company, Travelers Insurance Company, Insurance Company of North America, Defendants-Appellees.

July 18, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-8343-CIV-KLR), Kenneth L. Ryskamp, Judge.

Before HATCHETT and BLACK, Circuit Judges, and CLARK, Senior Circuit Judge.

HATCHETT, Circuit Judge.

This appeal presents the issue of whether certain business practices in the insurance industry limit competition in the temporary help industry through monopolization or constitute an agreement in restraint of trade in violation of the Sherman Act. We affirm the district court's ruling that the business practices employed in this case do not violate the Sherman Act.

BACKGROUND

Uniforce Temporary Personnel, Inc. and Uniforce Services, Inc. (collectively Uniforce) engage in the business of providing temporary employees for other businesses. In order for Uniforce to place its employees with businesses, Uniforce must first obtain workers compensation insurance. Generally, businesses can obtain

workers compensation insurance for their employees through one of three markets: (1) the voluntary market, (2) the self-insurance market, and (3) the "assigned risk" or residual market. Uniforce, however, only qualifies for workers compensation insurance from the residual market. The insurance industry calls such workers compensation policies "assigned risk" policies.

Policyholders of "assigned risk" policies pay higher insurance premiums than policyholders of policies obtained through the voluntary or self-insurance market. The premiums are higher because of the combined loss experience of the insurance carriers in the residual market and because these carriers oftentimes contract their duties under the "assigned risk" policies to other insurance carriers called "servicing carriers." These servicing carriers draft the "assigned risk" policies, collect the premiums, provide loss control services, and perform other services required of a worker's compensation carrier. In return for these services, the insurer pays substantial servicing fees.

## PROCEDURAL HISTORY

On June 15, 1994, Uniforce filed this lawsuit against the National Council on Compensation Insurance, Inc. (NCCI), the National Workers Compensation Reinsurance Pool (the pool), and insurance companies Liberty Mutual Insurance Company, Travelers Insurance Company, and Insurance Company of North America (collectively insurance carriers), alleging that their business practices in the insurance industry limit competition in the temporary help industry through monopolization of the administration of workers compensation insurance and price fixing

in violation of 15 U.S.C. § 2 of the Sherman Act.

In its complaint, Uniforce also alleges that NCCI, the pool, and the insurance carriers' conduct constitutes an agreement in restraint of trade including a conspiracy to restrain the temporary help industry in violation of 15 U.S.C. § 1 of the Sherman Act.[1] In addition, Uniforce sought a declaratory judgment on the issue of whether NCCI and the pool are insurance carriers and a judgment declaring the state that has overall responsibility for regulating and supervising the business of NCCI and the pool as it affects the temporary help industry.

Prior to discovery, NCCI, the pool, and insurance carriers (hereinafter appellees) moved for summary judgment on the grounds that: 1) the McCarran-Ferguson Act bars Uniforce's federal antitrust claims because the alleged activity involves the business of insurance; and 2) Uniforce fails to state a claim under the Sherman Act. The district court granted summary judgment on each of Uniforce's claims.[2]

CONTENTIONS

Uniforce contends that the McCarran-Ferguson Act's bar on antitrust claims involving the business of insurance does not apply in this case because the appellees' rate-making, classification and

---

[1]Uniforce also alleged that the rules under which assigned risk policies operate constitute a violation of equal protection and due process rights. Uniforce, however, does not appeal the district court's ruling as to this claim.

[2]The district court also found that the file rate and Noer-Pennington doctrines also barred Uniforce's antitrust claims. Because we find that the McCarran-Ferguson Act bars Uniforce's claims, we do not address the district court's alternative grounds for granting summary judgment.

allocation of risk, and other activities involving the administration of workers compensation insurance concern the "business of insurers" and not the "business of insurance." In the alternative, Uniforce contends that its antitrust claims fall within the "boycott" exception to the McCarran-Ferguson Act's bar on antitrust claims. Uniforce also contends that the district court erred in concluding that it failed to state a claim under the Sherman Act merely because appellees do not compete in the temporary help industry.

Appellees contend that the activities Uniforce complains of fall squarely within the meaning of "the business of insurance." Appellees also contend that Uniforce fails to allege facts sufficient to constitute a boycott within the meaning of the McCarran-Ferguson Act and therefore assert that the McCarran-Ferguson Act bars Uniforce's antitrust claims. Finally, even assuming that the McCarran-Ferguson Act does not bar Uniforce's claims, the appellees contend that their practices in the insurance industry could not violate the Sherman Act in this action because they do not compete in the temporary help industry.

## ISSUES

We address two issues on appeal: 1) whether the McCarran-Ferguson Act bars antitrust claims involving rate-making practices in the insurance industry; and 2) whether a competitive relationship must exist between parties in order to assert a viable claim under the Sherman Act.

## DISCUSSION

We review the district court's grant of summary judgment *de*

*novo* and apply the same legal standards that bound the district court in rendering its decision. *Canadyne-Georgia Corp. v. Continental Ins. Co.,* 999 F.2d 1547, 1554 (11th Cir.1993).

A. The McCarran-Ferguson Act

The McCarran-Ferguson Act exempts the business of insurance from antitrust laws if: 1) state law regulates such activity; and 2) the complained of activity does not constitute a "boycott." 15 U.S.C. §§ 1011, 1012, 1013(b) (1988). The McCarran-Ferguson Act provides in pertinent part:

> Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. § 1011 (1988). The McCarran-Ferguson Act further provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance...." 15 U.S.C. § 1012(b) (1988).

Uniforce concedes that the McCarran-Ferguson Act exempts conduct involving the business of insurance in most instances, but argues that the McCarran-Ferguson Act does not apply to its antitrust claims because they involve the "business of insurers," and not the business of insurance.[3] Uniforce defines the business

---

[3]Uniforce also concedes that the states in question regulate the appellees' activities in the insurance industry. Uniforce, however, characterizes the states' regulation of the appellees' activities as superficial. Because Uniforce has failed to submit any affidavits from state officials supporting its conclusion, we

of insurers as "the manipulation of the cost of workers compensation insurance" through the classification and allocation of risk and the contracting of the insurers' duties under the "assigned risk" policy to servicing carriers. Employing this definition, Uniforce claims that the appellees' activities create and impose unreasonable premiums for "assigned risk" policies while depriving the temporary employment industry of access to the voluntary market.

Simply put, Uniforce's antitrust claims center on the appellees' rate-making activity. We therefore must determine whether appellees' rate-making activity falls within the business of insurance for purposes of the McCarran-Ferguson Act. Courts make three inquiries when determining whether the practice complained of constitutes the business of insurance:

> first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

*Union Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3004, 73 L.Ed.2d 647 (1982). In this case, we find that appellees' rate-making activity satisfies each of these criterion. First, in computing the premium for the "assigned risk" policies, appellees combine the loss experiences of insurance carriers in the residual market and in effect spread the policyholder's risk. Second, appellees' rate-making activity produces the premiums for the "assigned risk" policies and this premium is an integral part of

---

conclude that the states in question sufficiently regulate the appellees' activities.

the policy relationship between the insurer and the insured. Third, the appellees' rate-making activity is limited to entities within the insurance industry. [4] Thus, appellees' rate-making activity clearly constitutes the business of insurance for purposes of the McCarran-Ferguson Act. *See also Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 224, 99 S.Ct. 1067, 1080, 59 L.Ed.2d 261 (1979) ("the fixing of insurance rates is the "business of insurance' ").

In the alternative, Uniforce argues that appellees' conduct falls within the "boycott" exception to the McCarran-Ferguson Act's antitrust exemption. Specifically, Uniforce alleges that appellees have conspired to "boycott, coerce, and intimidate" it and other temporary help companies to deprive the temporary help industry of access to the voluntary market for workers compensation insurance. Uniforce therefore argues that the McCarran-Ferguson Act does not entitle the appellees to immunity from its antitrust claims. In response, the appellees argue that the "boycott" exception cannot apply in this case because Uniforce's antitrust claims do not involve allegations of a "refusal to deal." We agree.

The McCarran-Ferguson Act provides in pertinent part: "Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation." 15

---

[4]Uniforce urges this court to reach a different conclusion merely because appellees NCCI and the pool are not insurance companies. We reject this argument noting that our review requires us to examine whether the practice complained of is limited to "entities within the insurance industry" and does not require that these entities be insurance companies.

U.S.C. § 1013(b) (1988).  For purposes of the McCarran-Ferguson Act, the Supreme Court defines a "boycott" as the refusal to deal in a collateral transaction as a means to coerce terms respecting a primary transaction.  *Hartford Fire Ins. v. California,* 509 U.S. 764, ----, 113 S.Ct. 2891, 2912-13, 125 L.Ed.2d 612 (1993) ("It is the refusal to deal beyond the targeted transaction that gives the great coercive force to a commercial boycott").  In this case, the primary transaction concerns the purchase of workers compensation insurance.  Uniforce does not allege that appellee refused to deal with it in a collateral transaction—i.e., the purchase of health insurance—in an attempt to coerce the terms of its purchase of workers compensation insurance.  Consequently, we conclude that the alleged acts do not constitute a "boycott" within the meaning of the McCarran-Ferguson Act.  Accordingly, we hold that the McCarran-Ferguson Act bars Uniforce's antitrust claims against the appellees.

B. The Sherman Act

Even assuming that the McCarran-Ferguson Act does not bar Uniforce's federal antitrust claims, its claims fail as a matter of law.  In its complaint, Uniforce alleges that appellees' rate-making activity in the insurance industry limits competition in the temporary help industry and thereby violates section 2 of the Sherman Act.  Section 2 of the Sherman Act provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ... shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars....

15 U.S.C. § 2 (1988).  This court noted that monopolization within

the meaning of the Sherman Act "by its terms, applies in a situation where there is competition and competitors." *Ad-Vantage Telephone Directory Consultants v. GTE Directories Corp.,* 849 F.2d 1336, 1348 (11th Cir.1987). In *Ad-Vantage Telephone Directory,* we held that "[i]n order to demonstrate "an area of effective competition' one must [first] establish a competitive relationship." *Ad-Vantage Telephone Directory,* 849 F.2d at 1348-49. In this case, Uniforce cannot demonstrate that a competitive relationship exists between it and the appellees because the appellees do not compete in the temporary help business. Uniforce also cannot demonstrate a competitive relationship between the insurance industry and the temporary help industry. Uniforce counter-argues that it has standing under section 2 of the Sherman Act as a consumer of the appellees' product and services to challenge appellees' rate-making activities. We, however, do not reach the standing issue because Uniforce fails as a matter of law to state a claim under the Sherman Act. Accordingly, we affirm the district court's grant of summary judgment for failure to state a claim for which relief can be granted.

CONCLUSION

For the reasons stated above, we hold that the McCarran-Ferguson Act bars Uniforce's antitrust claims. Accordingly, we affirm the district court's grant of summary judgment in favor of the appellees on each of Uniforce's claims.

AFFIRMED.