United States Court of Appeals,

Eleventh Circuit.

No. 95-3257.

Jeanine SLAGLE, For Herself and All Others Similarly Situated, Plaintiff-Appellant,

v.

ITT HARTFORD, State Farm Fire and Casualty Company, Allstate Insurance Company, Aetna Casualty & Surety Company, and Florida Windstorm Underwriting Association, The Hartford Company, Defendants-Appellees.

Dec. 31, 1996.

Appeal from the United States District Court for the Northern District of Florida. (No. 94-40563-WS), William Stafford, Judge.

Before EDMONDSON, Circuit Judge, FAY, Senior Circuit Judge, and ALDRICH[*], Senior District Judge.

ANN ALDRICH, Senior District Judge:

The appellant, Jeanie Slagle, a consumer of windstorm insurance in the state of Florida, brought the instant antitrust action against the appellees, insurance companies licensed to transact business in Florida and members of the Florida Windstorm Underwriting Association (FWUA). Slagle's complaint alleged that the appellants' business practices in the insurance industry limit competition in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. Thereafter, the appellees moved for judgment on the pleadings, contending that their alleged conduct was exempt under the McCarran-Ferguson Act, 15 U.S.C. § § 1011-1015. The magistrate judge assigned to the case agreed, and recommended granting the motion. Upon review of that decision and the filed objections, the

[*]Honorable Ann Aldrich, Senior U.S. District Judge for the Northern District of Ohio, sitting by designation.

district court adopted the magistrate judge's decision as its own and dismissed Slagle's complaint. Slagle appealed. For the reasons that follow, we AFFIRM.

I.

Briefly, the FWUA is a joint underwriting association comprised of property insurers licensed to do business in Florida. The Florida legislature created the FWUA in 1970 in response to the voluntary market's inability to provide windstorm-only insurance in Florida's high-risk coastal areas. Fla.Stat. § 627.351 (1993). State law mandates that the described insurers belong to the FWUA and provide windstorm coverage to eligible applicants who are unable to obtain such coverage through ordinary means. *See American Ins. Assoc. v. Florida Dep't of Ins.,* 646 So.2d 784, 785 (Fla.Dist.Ct.App.1994) (construing Fla.Stat. § 627.351(2)(b)[1]). Member insurers are required to pay for the FWUA's losses on a proportionate basis. Fla.Stat. § 627.351(2). Moreover, Florida's Department of Insurance may regulate the rates charged by the FWUA. *Id.* § 627.351(2)(a).

Slagle brought this action on behalf of herself and others as part of an insured class alleging that the appellee insurers, as

---

[1]Fla.Stat. § 627.351(2)(b) reads:

> The department shall require all insurers licensed to transact property insurance on a direct basis in this state to provide windstorm coverage to applicants from areas determined to be eligible pursuant to paragraph (c) who in good faith are entitled to, but are unable to procure, such coverage through ordinary means; or it shall adopt a reasonable plan or plans for the equitable apportionment or sharing among such insurers of windstorm coverage. The commissioner shall promulgate rules which provide a formula for the recovery and repayment of any deferred assessments.

members of the FWUA, violated the antitrust laws by refusing to issue windstorm insurance on an open market in certain Florida coastal areas. Specifically, Slagle alleged that the appellees have engaged in concerted anticompetitive conduct by the "fixing, pegging or stabilizing of insurance premiums and prices among ostensible competitors through horizontal price fixing and unlawful allocation of markets, customers and territories and the establishment and agreement upon a boycott." According to Slagle, the appellees have agreed among themselves on the rates charged for windstorm insurance coverage sold to the public. Consumers desiring to purchase windstorm insurance coverage in designated coastal areas of Florida are directed by the insurance carrier, issuing their other coverages, to the FWUA as the only source for the issuance of windstorm coverage. None of the insurance companies which combined to form the FWUA will offer for sale any windstorm insurance coverage to their customers, or the marketplace of customers for whom they would otherwise compete. Consequently, the sole source of windstorm insurance coverage for those customers is the FWUA. *See* Appellant's Brief, p. 10-11. Slagle maintains that such conduct violates the Sherman Act, as provided in 15 U.S.C. § 1, and falls within the "boycott" exception in § 3(b) of the McCarran-Ferguson Act.

The Sherman Act establishes that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, ... to be illegal." 15 U.S.C. § 1. As applicable to the present case, and notwithstanding the antitrust laws of the

Sherman Act, the McCarran-Ferguson Act provides that regulation of the insurance industry is generally a matter for the states, 15 U.S.C. § 1012(a), and that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." *Id.* § 1012(b). Section (3)(b) of the McCarran-Ferguson Act creates an exception to the Act's antitrust exemption, stating that the Sherman Act shall remain applicable, in any event, "to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation." 15 U.S.C. § 1013(b). In effect, section 3(b) creates an exception to the general rule that state regulated insurance activities are immune from federal regulation under the Sherman Act.

Prior to discovery, the appellees moved for judgment on the pleadings reasoning that the McCarran-Ferguson Act bars Slagle's federal antitrust claims because the alleged activity involves the "business of insurance," and is currently regulated by Florida state law. The appellees further maintained that the alleged conduct did not fall within the "boycott" exception to the McCarran-Ferguson Act. After a review of the magistrate judge's report and recommendation, which agreed with the appellees on both issues, the district court granted that motion. *See Slagle v. ITT Hartford Ins. Group,* 904 F.Supp. 1346 (N.D.Fla.1995).

On appeal, Slagle contends that the appellees' alleged conduct is not entitled to McCarran-Ferguson immunity because such conduct in refusing to deal with consumers relates to the "business of insurers" and not the "business of insurance." Alternatively,

Slagle argues that the appellees' conduct constitutes a "boycott" and thus falls within the exception to the McCarran-Ferguson Act's bar on antitrust claims.

In response, the appellees assert that the district court correctly ruled that the challenged conduct pertains to the "business of insurance" as applicable to § 2(b) of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b). Moreover, the appellees argue that Slagle fails to plead the type of conduct which would constitute a "boycott" as that term has been defined by the Supreme Court in the context of § 3(b) of the McCarran-Ferguson Act, 15 U.S.C. § 1013(b).

## II.

Judgment on the pleadings is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian,* 85 F.3d 1521, 1524 (11th Cir.1996) (citing Fed.R.Civ.P. 12(c)). The complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 2917, 125 L.Ed.2d 612 (1993). "When reviewing a judgment on the pleadings, we accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Ortega,* 85 F.3d at 1524 (citing *Swerdloff v. Miami Nat'l Bank,* 584 F.2d 54, 57 (5th Cir.1978)); *see also Hartford,* 509 U.S. at 770, 113 S.Ct. at 2895; *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist*

*Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989), *cert. denied,* 493 U.S. 1079, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990). Accordingly, as a decision on the merits, we review a judgment on the pleadings *de novo.* *Ortega,* 85 F.3d at 1524-25 (citing *General Conference Corp.,* 887 F.2d at 230).

III.

As stated above, the McCarran-Ferguson Act exempts conduct from the federal antitrust laws if it is "the business of insurance" and is "regulated by state law." 15 U.S.C. § 1012(b). However, under Section 3(b), the exemption does not apply if the challenged conduct involves an act or agreement of "boycott, coercion, or intimidation." 15 U.S.C. § 1013(b).

A. *The Business of Insurance and the McCarran-Ferguson Act*

The district court concluded[2] that the appellees' conduct as alleged in the complaint is the "business of insurance." *Slagle v. ITT Hartford Ins. Group,* 904 F.Supp. 1346, 1349 (N.D.Fla.1995). According to the district court, the appellees' conduct pertains to transferring and spreading a policyholder's risk, and that "[t]he setting of premium rates and terms is an integral part of the policy relationship between the insurer and the insured, and that activity is limited to entities in the insurance industry." *Id.* Consequently, because the conduct is also regulated by the State of Florida, Fla.Stat. § 627.062 (1993), the McCarran-Ferguson Act exemption is applicable. Slagle challenges the district court's conclusion by asserting that the appellees' alleged boycott and

---

[2]The opinion issued by the district court incorporates the entire decision of the magistrate judge.

enforcement activities are not the "business of insurance," but are more accurately characterized as the "business of insurers." We disagree.

The Supreme Court has developed a three-part test for determining whether particular conduct constitutes the "business of insurance." *See Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982). Here, this Court examines:

> *first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry.

*Uniforce Temp. Personnel v. National Council on Compensation Ins., Inc.,* 87 F.3d 1296, 1300 (11th Cir.1996) (quoting *Pireno,* 458 U.S. at 129, 102 S.Ct. at 3008) (emphasis in the original).

In this case, we find, as did the district court, that appellees' conduct fulfills each of these requirements. There is no doubt that the appellees' conduct in setting the FWUA premium rate has the effect of spreading and transferring a policyholder's risk. *See In re Workers' Compensation Ins. Antitrust Litig.,* 867 F.2d 1552, 1556 (8th Cir.) ("it is axiomatic that the fixing of rates is central to transferring and spreading the insurance risk"), *cert. denied,* 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989). Nor can it be questioned that this practice, which affects only the parties within the insurance industry, remains an essential part of the policy relationship. Accordingly, we conclude that appellees' alleged rate-fixing conduct is the "business of insurance." *See Group Life & Health Ins. v. Royal*

*Drug Co.,* 440 U.S. 205, 224 n. 32, 99 S.Ct. 1067, 1080 n. 32, 59 L.Ed.2d 261 (1979) ("It is clear from the legislative history [of the McCarran-Ferguson Act] that the fixing of rates is the "business of insurance.' "); *SEC v. National Sec., Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969) ("Certainly the fixing of rates is part of the business [of insurance]."); *Uniforce,* 87 F.3d at 1300 (holding that the rate-making activity of insurers in allegedly depriving temporary help industry of access to voluntary market for workers compensation insurance and providing coverage under assigned risk policies involved "business of insurance"); *Ocean State Physicians Health Plan v. Blue Cross & Blue Shield,* 883 F.2d 1101, 1108 (1st Cir.) (the marketing and pricing of insurance policies is the business of insurance), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990).

B. *The Boycott Exception*

In the alternative, Slagle argues that appellees' conduct falls within the "boycott" exception to the McCarran-Ferguson Act's antitrust exemption. Specifically, Slagle contends that the appellees have "stepped out from under the cloak of McCarran-Ferguson protection by agreeing upon and carrying out a plan to create a cartel and foreclose the windstorm insurance market by boycotting and refusing to deal with customers within the windstorm prone coastal counties of Florida." Slagle therefore claims that the McCarran-Ferguson Act does not entitle the appellees to immunity from her antitrust claims. In response, the appellees argue that Slagle's complaint alleges nothing more than a "cartelization," and the allegations, taken as true, do not amount

to a "boycott."  We agree.

In *Hartford Fire Ins. v. California,* 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993), the Supreme Court explained the term "boycott" for purposes of the McCarran-Ferguson Act. Conduct constitutes a "boycott" where, in order to coerce a target into certain terms on one transaction, parties refuse to engage in other, unrelated or collateral transactions with the target. *Id.* at 802-03, 113 S.Ct. at 2912.  Specifically, it is "the refusal to deal beyond the targeted transaction that gives great coercive force to a commercial boycott:  unrelated transactions are used as leverage to achieve the terms desired." *Id.* at 802-03, 113 S.Ct. at 2912; *Uniforce,* 87 F.3d at 1298 (establishing that a "boycott" is the "refusal to deal in a collateral transaction as a means to coerce terms respecting a primary transaction").  In terms of the McCarran-Ferguson Act, the term "boycott" means more than just "an absolute refusal to deal on any terms." *Id.* at 801, 87 F.3d at 2911.[3]

In this case, Slagle contends that the appellees refuse to deal with her directly in her attempt to purchase windstorm insurance.  However, such alleged conduct does not constitute a boycott because the conditions of their refusal to deal relate

---

[3]As acknowledged by the district court in this case, the *Hartford* Court explained that "no one would call [a labor strike] a boycott, because the conditions of the "refusal to deal' related directly to the terms of the refused transaction (the employment contract)." *Slagle v. ITT Hartford Ins. Group,* 904 F.Supp. 1346, 1350 (N.D.Fla.1995) (quoting *Hartford,* 509 U.S. at 805, 113 S.Ct. at 2913).  Here, "[a] refusal to work changes from strike to boycott only when it seeks to obtain action from the employer unrelated to the employment contract." *Id.* (quoting *Hartford,* 509 U.S. at 805, 113 S.Ct. at 2913).

directly to the terms of the purchase of windstorm insurance, the primary transaction, and not to some collateral transaction. In essence, Slagle claims that the appellees conspired to fix prices at an unlawful rate, but as clearly announced in *Hartford,* a conspiracy to charge an inflated price is not a "boycott". *Id.* at 802, 113 S.Ct. at 2912.[4] Slagle simply fails to allege that the appellees are using "unrelated transactions ... as leverage to achieve the terms desired." *Hartford,* 509 U.S. at 803, 113 S.Ct. at 2912. Accordingly, we conclude that the acts alleged in Slagle's complaint do not come within the "boycott" exception to the McCarran-Ferguson Act.

This conclusion is supported by our recent decision in *Uniforce Temporary Personnel, Inc. v. National Council on Compensation Ins.,* 87 F.3d 1296 (11th Cir.1996). In *Uniforce,* temporary employment companies brought an action against a workers compensation insurance rating organization, insurers, and a reinsurance pool. The plaintiffs alleged that the defendants' conduct in depriving the temporary help industry of access to the voluntary market for workers compensation insurance and providing coverage under assigned risk policies constituted a "boycott" under the McCarran-Ferguson Act, and thereby permitted the application of the Sherman Act. The *Uniforce* court disagreed. Examining the

---

[4]Here, the Court noted that "if a concerted agreement, say, to include a security deposit in all contracts is a "boycott' because it excludes all buyers who won't agree to it, then by parity of reasoning every price fixing agreement would be a boycott also. The use of the single concept, boycott, to cover agreements so varied in nature can only add to confusion." *Hartford*, 509 U.S. at 802, 113 S.Ct. at 2912 (quoting L. Sullivan, Law of Antitrust 257 (1977)).

plaintiffs' claim using the *Hartford* definition of "boycott," the court concluded that the primary transaction in that case concerned the purchase of workers compensation insurance. *Id.* at 1300. Because the plaintiffs were unable to allege that the defendants refused to deal with them in a collateral transaction (i.e., the purchase of health insurance), the court held that the alleged conduct did not constitute a "boycott" within the meaning of the McCarran-Ferguson Act. *Id.* Consequently, the McCarran-Ferguson Act barred the plaintiffs' antitrust claims. *Id.* The factual similarities in the present case lead us to the same conclusion as that reached in *Uniforce.*

IV.

For the reasons stated herein, we hold that the McCarran-Ferguson Act bars Slagle's antitrust claims. Accordingly, the district court's order dismissing Slagle's claims is AFFIRMED.